UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DOCKET NO. 1:22-cv-12119

**ALEXANDRA E. MELINO,**
*Plaintiff*,

v.

**BOSTON MEDICAL CENTER,**
*Defendant.*

**COMPLAINT AND
JURY TRIAL DEMAND**

## INTRODUCTORY STATEMENT

1. Defendant violated Plaintiff's right to the free exercise of religion by requiring that as a condition of her continued employment she be injected with a product advertised as a COVID-19 vaccine and, when Plaintiff's religious beliefs prevented Plaintiff from being injected, by terminating her employment. Defendant violated both Title VII of the Civil Rights Act and the Massachusetts anti-discrimination law, M.G.L. c. 151B.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action under 42 U.S.C. § 2000e-5 (f) and 28 U.S.C. §§ 1331 and 1343 (a) and has supplemental jurisdiction over State-law claims.

## PARTIES

3. Plaintiff Alexandra E. Melino is a resident of Tewksbury, Massachusetts.

4. Defendant Boston Medical Center is an employer within the meaning of 42 U.S.C. § 2000e (b) and of M.G.L. 151B, § 1 (5) with a principal office at One Medical Center Place, Boston, MA 02118.

## EEOC CHARGE

5. Plaintiff filed a timely charge with the United States Equal Opportunity Commission (EEOC) (Charge No. 523-2022-1456). The EEOC issued a right-to-sue notice on September 19,

2022.  Plaintiff brings this case within 90 days of receipt of the EEOC right-to-sue notice.  All preconditions for filing this lawsuit have been performed or have occurred.

## FACTS

6. Plaintiff is a Christian who worked as a Registered Nurse at Boston Medical Center until Defendant terminated her employment on or about October 15, 2021.

7. On August 21, 2021, Defendant adopted a policy titled "COVID-19 Immunization" (Exhibit A) that stated:

> Vaccination for COVID-19 is a condition of employment at BMC...  COVID-19 vaccination is a requirement to work or volunteer or to be visiting personnel at BMC unless BMC approves a medical or religious exemption from the requirement for immunization.

The policy set forth a procedure by which employees could seek exemption on medical grounds and on religious grounds.

8. In enforcing its policy, Defendant informed Plaintiff that in order to continue her employment, she would need to be injected with a product advertised as a COVID-19 vaccine.

9. On or about September 6, 2021, in compliance with the procedure set forth in the policy, Plaintiff submitted a written request for a religious exemption.

10. Defendant asked Plaintiff about the nature of her religious beliefs.  Defendant then informed Plaintiff that Defendant had concluded that Plaintiff was not sincere in those beliefs.  Defendant did not state how it arrived at that conclusion, or what criteria — if any — it employed in order to determine the sincerity of Plaintiff's religious beliefs.

11. Defendant denied Plaintiff's request for a religious exemption on October 7, 2021, asserting that Plaintiff's "passionate objection" did not warrant exemption and that accommodating Plaintiff's request would cause undue hardship.

12.     At all material times, Defendant knew that Defendant could have accommodated Plaintiff's request without undue hardship.

13.     The products known as "COVID-19 vaccines" produced by Johnson & Johnson, Moderna, and Pfizer do not prevent recipients from contracting and transmitting COVID-19.

14.     According to the results of the drug trials that Pfizer conducted in 2020 in connection with its "vaccine," the absolute risk reduction (the reduction of the risk that a recipient would have a symptomatic positive test for COVID-19 after receiving the drug) was 0.84%.[1]  As cardiologist Dr. Aseem Malhotra stated in the *European Scientist*:

> [W]hat was reported in the mainstream news as being 95% effective against infection was in fact relative risk reduction, not absolute risk reduction from the double blind randomized controlled trial that took place during the more lethal circulating post-Wuhan ancestral strain of the virus. That specific NEJM paper which underpinned the emergency use authorization of the Pfizer mRNA vaccine actually revealed an absolute risk reduction (ARR) of 0.84%. In other words, for every 119 individuals vaccinated one person would be protected from being infected... Furthermore, as newer and thankfully, less lethal, mutated strains became dominant, any protection against infection at the very least became less effective and likely completely ineffective, even if there is some significant (as yet to be fully determined in absolute individual terms) protection against serious illness and death.[2]

15.     With its expertise in the field, Defendant knew that claims about the products' efficacy in preventing COVID-19 were false.  Despite the FDA's claim in August 2021 that the products are effective at preventing COVID-19, it soon became obvious — even to non-experts — that they are not.

---

[1] https://www.thennt.com/review-covid-analysis-2020/

[2] Dr. Aseem Malhotra, "Being Pro-Covid 19 Vaccines and Pro-transparency are not mutually exclusive – ending all mandates globally and accessing the raw data is now essential to restore trust," *European Scientist* (August 16, 2022).

https://www.europeanscientist.com/en/features/being-pro-covid-19-vaccines-and-pro-transparency-are-not-mutually-exclusive-ending-all-mandates-globally-and-accessing-the-raw-data-is-now-essential-to-restore-trust/

16.     The number of prominent people who have received the products advertised as "vaccines" and "boosters" and gone on to catch COVID-19 makes the reality difficult to ignore. For example, Dr. Anthony Fauci (director of the National Institutes of Allergy and Infectious Diseases) — fully "vaccinated" and "boosted" — caught COVID-19 in June 2022, took Paxlovid and promptly caught it again.[3]

17.     President Joe Biden — vaccinated and double-boosted[4] — recovered from another bout of COVID-19 over the summer of 2022.  He received his second booster dose on Wednesday, March 30, 2022, and tested positive for COVID-19 on July 21, 2022, just 15 weeks later. President Biden took Paxlovid, and (like Dr. Fauci) caught COVID-19 again.[5]  It is also common knowledge that First Lady Jill Biden — twice "vaccinated" and twice "boosted,' according to her spokesperson — has also caught COVID-19.[6]

18.     CDC director Rochelle Walensky tested positive for COVID-19 on October 22; the CDC announced that Walensky was "up to date with her vaccines."[7]  This came approximately one month after she was injected with the bivalent product.  On the day of her injection, ABC quoted Walensky as saying:

> All the data from this new bivalent vaccine have demonstrated that it will protect you against — more likely protect you — against the strains that we have circulating right now, those Omicron BA.5 strains, as well as keep you well protected, because we've seen that some of that protection can wane over time.

---

[3] https://www.cnbc.com/2022/07/27/as-more-people-report-covid-rebounds-after-paxlovid-experts-insist-cases-are-rare.html

[4] https://www.politico.com/news/2022/03/30/biden-receive-second-covid-booster-00021667
[5] https://www.cnn.com/2022/06/13/americas/justin-trudeau-covid19-intl/index.html;
https://www.businessinsider.com/justin-trudeau-got-moderna-booster-shot-after-his-astrazeneca-jab-2021-7;
https://www.politico.com/news/2022/06/13/trudeau-positive-covid-00039165
[6] https://www.reuters.com/world/us/us-first-lady-jill-biden-tests-positive-covid-19-statement-2022-08-16/
[7] https://www.cdc.gov/media/releases/2022/s1022-covid-director.html

> So, we are really encouraging everybody to roll up their sleeves and get this updated bivalent vaccine.[8]

Just four weeks after her bivalent-booster injection, Walensky caught COVID-19. Then she took Paxlovid and caught it again.[9]

19. The inefficacy of the products is something that public health officials are now acknowledging publicly. Dr. Deborah Birx, former White House Coronavirus Response Coordinator, stated recently: "I knew these vaccines were not going to protect against infection and I think we overplayed the vaccines."[10] Similarly, as former CDC director Dr. Tom Frieden stated, "protection against infection through vaccination is something of a flash-in-the-pan phenomenon."

20. Dr. Anthony Fauci now concedes that vaccine-induced immunity "isn't durable":

> "We know that people get infected and then get reinfected. And people get vaccinated, and they get infected. So, immunity isn't measured in decades or lifetimes. It's measured in several months."[11]

21. Acknowledging this reality, the CDC changed its COVID-19 guidance in August 2022, so that its prevention recommendations "no longer differentiate based on a person's vaccination status."[12] The CDC now concedes that the products advertised as COVID-19 vaccines do not prevent recipients from catching, getting sick from, and spreading COVID-19.

---

[8] https://abcnews.go.com/Health/cdc-director-weighs-pandemic-bivalent-covid-shot-critically/story?id=90323875
[9] https://www.cdc.gov/media/releases/2022/s1031-covid-19-cdc-director.html
[10] https://youtu.be/8AYqTgtIgLA

[11] https://www.marketwatch.com/articles/anthony-fauci-covid-19-biden-immunity-51658437525?siteid=nf-rss
[12] https://www.cdc.gov/mmwr/volumes/71/wr/mm7133e1.htm

22. Figures from the Massachusetts Department of Public Health (DPH) figures show that since at least February 2022 the majority of people hospitalized in Massachusetts for COVID-19 have been "fully vaccinated."

23. Massachusetts DPH figures show that by mid-July 2022 more than 3,000 "fully vaccinated" people in Massachusetts had died from COVID-19. The Massachusetts DPH categorizes individuals as "fully vaccinated" if they have received the number of doses required to complete the COVID-19 vaccine series for their age and all of these doses have been reported to the Massachusetts Immunization Information System.

24. In mid-July the Massachusetts DPH stopped publishing the number of COVID-19 breakthrough cases, i.e. people who were injected with the products and then caught the disease. The DPH website states "data on vaccine breakthrough cases in Massachusetts are no longer being updated." It does not say why.

25. The latest — and apparently final — weekly report on COVID-19 cases among "fully vaccinated" individuals states that 11.4% of "fully vaccinated" people have caught COVID-19 after becoming "fully vaccinated":

- As of July 2, 2022 there were 5,408,359 fully vaccinated people and there were 617,337 cases in vaccinated people

- 10,121 of those 617,337 cases resulted in hospitalization and 3,213 cases resulted in death based on information reported to date[13]

26. Below the figures, the DPH includes this note about undercounting both of cases and hospitalizations:

> Identification of cases in vaccinated people relies on matching data between the system of record for cases and vaccinations. The number of cases in vaccinated

---

[13] Massachusetts Department of Public Health COVID-19 Vaccine Data –Tuesday, July 5, 2022.

people may be undercounted due to discrepancies in the names and dates of birth of individuals, resulting in an inability to match records across systems. Hospitalization data is likely also undercounted as identification and reporting of hospitalized cases relies on that information being obtainable by case investigators through patient interview.

DPH's responses to public records requests show that the number of breakthrough cases in the period June 26-September 3, 2022, was 58,199. Exhibits B and c. Of the 5,555,220 people in Massachusetts that DPH classifies as "fully vaccinated" at least 675,000 (more than 12%) are recorded as having subsequently caught COVID-19.

27.     For most people who display some symptoms of COVID-19, those symptoms are mild (e.g. sore throat, slight cough, and runny nose) and do not require a visit to a healthcare provider. If a person with COVID-19 does not report the infection to a healthcare provider, nobody enters the case into a healthcare provider's database, and it does not appear in the DPH figures.

28.     Accordingly, the DPH case count of 617,337 "fully vaccinated" people who subsequently caught COVID-19 excludes those who do not report the fact to a healthcare provider. It also excludes people who were injected with the products but caught COVID-19 within the 14-day period prior to them becoming "fully vaccinated" according to the Department's definition of that term.

29.     The stated reason for requiring employees to be injected with the product was to prevent them from contracting COVID-19 and spreading it to others. Plaintiff presented no more of a risk than employees who had been injected with the products advertised as COVID-19 vaccines (products that do not, in fact, prevent recipients from contracting ad transmitting COVID-19).

30.     Defendant's express reason for terminating Plaintiff was the fact that Plaintiff had not been injected with a product advertised as a COVID-19 vaccine. At all material times, Defendant knew that: (a) being injected with such a product would not have prevented Plaintiff

from contracting and spreading COVID-19; and (b) that Defendant could have accommodated Defendant's request for a religious exemption without undue hardship.

**CLAIM FOR RELIEF**

COUNT 1

Section 703 (a) of Title VII, 42 U.S.C. § 2000e-2(a)

Defendant discriminated against Plaintiff on the basis of her religion

31. Plaintiff repeats and incorporates by reference the factual allegations in the preceding paragraphs.

32. Plaintiff sincerely possessed a bona fide religious belief that conflicted with an employment requirement, namely Defendant's requirement that Plaintiff be injected with a product advertised as a COVID-19 vaccine.

33. Plaintiff informed Defendant of the conflict.

34. Defendant took adverse employment decisions against Plaintiff for her not complying with the employment requirement because of her conflicting religious belief, namely terminating her employment.

35. Defendant discriminated against Plaintiff on the basis of her religion (Christian) in violation of 42 U.S.C. § 2000e-2(a) as follows:

36. Defendant failed to engage with Plaintiff in an interactive process in efforts to reasonably accommodate her religious beliefs that prohibit her from being injected with the products advertised as COVID-19 vaccines.

37. Defendant failed to adequately attempt to reasonably accommodate Plaintiff's sincerely held religious observance, practice, and beliefs that prohibit her from being injected with the products advertised as COVID-19 vaccines.

38.     Defendant failed to reasonably accommodate Plaintiff's sincerely held religious observance, practice, and beliefs that prohibit her from being injected with the products advertised as COVID-19 vaccines.

39.     Accommodating Plaintiff's sincerely held religious observance, practice, and beliefs that prohibit her from being injected with the products advertised as COVID-19 vaccines would not have caused Defendant undue hardship.

40.     Defendant discriminated against Plaintiff on the basis of her religion in violation of the Civil Rights Act, Section 703 (a) of Title VII, 42 U.S.C. § 2000e-2(a).

41.     As a result of Defendant's acts and omissions, Plaintiff has suffered harm.

## COUNT 2

### Violation of the Massachusetts General Laws Chapter 151B

### Defendant discriminated against Plaintiff on the basis of her religion

42.     Plaintiff repeats and incorporates by reference the factual allegations in the preceding paragraphs.

43.     Plaintiff sincerely possessed a bona fide religious belief that conflicted with an employment requirement, namely Defendant's requirement that Plaintiff be injected with a product advertised as a COVID-19 vaccine.

44.     Plaintiff informed Defendant of the conflict.

45.     Defendant took adverse employment decisions against Plaintiff for her not complying with the employment requirement because of her conflicting religious belief, namely inducing her to renounce her beliefs and terminating her employment.

46.     Defendant discriminated against Plaintiff on the basis of her religion (Christian) in violation of Chapter 151B of the Massachusetts General Laws as follows:

47. Defendant failed to engage with Plaintiff in an interactive process in efforts to reasonably accommodate her religious beliefs that prohibit her from receiving the products advertised as COVID-19 vaccines.

48. Defendant failed to adequately attempt to reasonably accommodate Plaintiff's sincerely held religious observance, practice, and beliefs that prohibit her from receiving the products advertised as COVID-19 vaccines.

49. Defendant failed to reasonably accommodate Plaintiff's sincerely held religious observance, practice, and beliefs that prohibit her from receiving the products advertised as COVID-19 vaccines.

50. Accommodating Plaintiff's sincerely held religious observance, practice, and beliefs that prohibit her from being injected with the products advertised as COVID-19 vaccines would not have caused Defendant undue hardship.

51. Defendant discriminated against Plaintiff on the basis of her religion in violation of M.G.L. c. 151B.

52. As a result of Defendant's acts and omissions, Plaintiff has suffered harm.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issue so triable pursuant to Fed. R. Civ. P. 38 and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

**PRAYER FOR RELIEF**

Plaintiff respectfully requests that this Honorable Court:

A. Award Plaintiff compensatory and consequential damages (including damages for emotional distress) plus her costs and her reasonable attorney's fees;

B. Award Plaintiff back pay and front pay;

C.	Award punitive damages; and

C.	Order such other and further relief as the Court deems just and appropriate.

    Respectfully Submitted
    Alexandra E. Melino
    By Her Attorney:

    Peter Vickery, Esq.
    Bobrowski & Vickery, LLC
    27 Pray Street
    Amherst, MA 01002
    BBO# 641574
    Tel. (413) 992 2915
December 14, 2022    Email: peter@petervickery.com